UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT DONAHUE BYERS,

      Petitioner,

v.                               Case No.  5:12cv90/MP/CJK

MICHAEL D. CREWS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

    Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 21).  Petitioner was invited to reply, but failed to do so even after being given several extensions of time.  (*See* Doc. 22; *see also* Docs. 24, 26, 28, 30).[1]  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

---

[1]The latest extension expired on November 4, 2013.  (Doc. 30).

## BACKGROUND AND PROCEDURAL HISTORY

On May 2, 2000, petitioner was charged by Information filed in Washington County Circuit Court Case Number 00-CF-103, with Robbery Without a Weapon. (Ex. A, p. 8).[2]  The following July, petitioner was charged by Information filed in Washington County Circuit Court Case Number 00-CF-149, with Resisting an Officer With Violence (Count I) and Escape (Count II).  (*Id*., p. 136).  The cases merged in January of 2001, when defense counsel filed the same "Motion for Mental Health Examination" in both cases.  (*Id*., pp. 35-36, 143-44).[3]  The trial court ordered that petitioner be examined for sanity at the time of the offense and for competence to proceed.  (*Id*., pp. 37-38, 145-46).[4]  On February 16, 2001, petitioner was adjudged incompetent to proceed and committed to the Florida Department of Children and Families (DCF).  (*Id*., pp.  43-46, 148-51).  In a letter dated June 15, 2001, the DCF notified the court that petitioner was competent to proceed and that petitioner no longer met the criteria for continued involuntary commitment.  (*Id*., pp.  47-51, 53, 153-58).  The DCF letter was accompanied by a competency evaluation, performed by a psychological specialist and reviewed by a senior psychologist, finding petitioner competent.  (*Id*.).  On June 20, 2001, the trial court ordered the Sheriff of Washington County to take petitioner into custody and return him to Washington County for a hearing on the issues raised by the DCF's report.  (*Id*., pp. 52, 152).  The court held a pretrial hearing on August 6, 2001, and, without holding a hearing on the issue of petitioner's competence or making an express judicial finding that petitioner was competent to proceed, set petitioner's cases for trial on September 18, 2001. (Ex. A,

---

[2]All references to exhibits are to those provided at Doc. 21, unless otherwise noted.

[3]Page 144 is missing, but corresponds with page 36.

[4]Page 146 is missing, but corresponds with page 38.

pp. 54, 159; Ex. G, pp. 72-73).  Thereafter, petitioner executed a counseled, written plea agreement titled "Plea, Waiver And Consent Form," in which petitioner agreed to plead no contest to all counts as charged in both cases, in exchange for the following sentence: "6 years DOC habitual offender sentence, followed by four years probation, complete Keaton Program if eligible, work hours, random UAs." (Ex. A, pp. 56-57, 161-62).  A hearing was held on September 18, 2001, at which petitioner entered, and the court accepted, his no contest plea.  (Ex. D).  Petitioner was adjudicated guilty and sentenced on September 18, 2001, to concurrent terms of 6 years imprisonment as a habitual felony offender followed by 4 years of probation. (Ex. A, pp. 60-74, 166-177, Ex. D).  The court noted the following with regard to petitioner's probation:

> I will order you to enroll in and complete the Keaton program, if you're eligible to do so.  As an addition to that, you will be ordered to undergo an evaluation for substance abuse and receive any treatment recommended.  If it's not at Keaton, then any other program they recommend – inpatient or outpatient – you'll be required to complete.

(Ex. D, pp. 241-42).  An  order placing petitioner on probation was entered October 30, 2001, nunc pro tunc to September 18, 2001.  (Ex. A, pp. 75-76).  Petitioner did not take a direct appeal.  (PD-1, pp. 2, 6).

Petitioner was released from the incarcerative portion of his sentence to probation on September 28, 2006.  (Ex. E, pp 253-54; Ex. G, pp. 3, 54).  In late November of 2006, the Department of Corrections filed a violation report and an affidavit of violation of probation alleging petitioner violated the terms of his probation.  (Ex. A, pp. 82-85, 188-191).  An addendum to the violation report, and an amended violation of probation affidavit was filed on December 27, 2006, alleging that petitioner violated the following four conditions of his probation:  (1) violation of Condition 1 ("You must report each month as directed by your officer.  You will

make a full and truthful report to your officer on the form provided for that purpose.")
– in that as of November 20, 2006, petitioner had not reported to his probation officer
for the month of November after being instructed by his officer on October 4, 2006,
to report to his officer by the fifth day of each month, (2) violation of Condition 3
("You will not change your residence or employment or leave the county of your
residence without first procuring the consent of your officer.") – in that petitioner
moved from his last known place of residence (the Salvation Army Faith Based
Program) without first procuring the consent of his probation officer, (3) violation of
Condition 13 ("You must undergo a drug/alcohol treatment evaluation, and if
treatment is deemed necessary, you must successfully complete the treatment.  If
inpatient treatment is deemed necessary you must enter and complete residential
treatment.") – in that on October 20, 2006, petitioner underwent a drug/alcohol
evaluation with Salvation Army Residential Correction Services where it was
recommended that petitioner could benefit from a self help program (12-step
program) as well as counseling, but petitioner failed to return to his probation officer
so that he could be referred to a self help program; and (4) violation of Condition 5
("You will live without violating any law.  A conviction in a court of law shall not be
necessary in order for such a violation to constitute a violation of your probation.")
– in that petitioner was arrested by the Jacksonville Sheriff's Office on December 16,
2006, for committing the new offenses of Knowingly Driving While License
Suspended, Cancelled Or Revoked; and Operating a Motor Vehicle Without Safety
Belt In Use.  (Ex. A, pp. 86-89, 192-195).

A VOP hearing was held on March 13, 2007.  (Ex. A, pp. 96, 197; Ex. E
(transcript)).  Petitioner was represented by counsel and testified at the hearing.  (Ex.
E).  The court found as follows:

> The court is going to find based on the testimony presented that Mr. Byers violated his probation by absconding from his supervision, and that subsequent to October 4th, 2006, he did not report to his probation officer nor did his probation officer know his whereabouts.  The probation officer's testimony is convincing that he made efforts to contact the defendant through both the Salvation Army where the defendant was staying, and also through the defendant's employer, and he was unable to locate the defendant through either because the defendant, neither one of those resources knew where the defendant was.
>
> Additionally, the Court will find that the defendant violated his probation by, by not living without violating the law in that he was arrested for and committed the new offense of knowingly driving while his license were [sic] suspended on December 16, 2006.
>
> The Court will also find that he failed to, he violated his probation by violating Condition 13 involving the substance abuse treatment.
>
> The Court will find that each of those is material and willful violations of his probation and the Court would find that if only Condition 3, which is the absconding condition, and Condition 5, which is the driving on a suspended driver's license condition, were violated by the defendant, if the testimony only substantiated those two violations, that those would be sufficient in this Court's determination to determine that the defendant had willfully violated his probation in a material and substantial manner.

(Ex. E, pp. 274-75).  The Order of Revocation of Probation found that petitioner violated the conditions of Probation in a material respect by: "(1) failing to make full and truthful report (2) changing residence without first procuring the consent of the probation officer (3) failing to successfully complete or remain in drug/alcohol treatment until the provider determined that treatment is no longer necessary."  (Ex. A, p. 116).  The court sentenced petitioner as a habitual felony offender to 30 years imprisonment for the robbery (Case No. 00-CF-103) and concurrent terms of 10 and 30 years imprisonment for the resisting officer and the escape (Case No. 00-CF-149).

(Ex. A, pp. 102-116; Ex. B, pp. 198-211; Ex. E, p. 382).  Petitioner appealed.  (Ex. A, p. 119).  Petitioner's appeal was dismissed on July 17, 2009, for petitioner's failure to respond to the court's order requiring him to show cause why the appeal should not be dismissed for his failure to file an initial brief.  (Ex. F).

During the pendency of petitioner's appeal, on March 28, 2007, petitioner filed a motion to reduce or modify sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. A, p. 117-18; Ex. B, pp. 212-13).  The trial court denied the motion on April 9, 2007.  (Ex. A, p. 120; Ex. B, p. 215).

On November 23, 2009, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. G, pp. 1-47).  The circuit court summarily denied the motion .  (Ex. H, pp. 133-210).  The Florida First District Court of Appeal ("First DCA") per curiam affirmed on March 9, 2011, without a written opinion.  *Byers v. State*, 56 So. 3d 769 (Fla. 1st DCA 2011) (Table) (copy at Ex. K).  The mandate issued April 5, 2011.  (PD-2, p. 4).

On September 5, 2011, petitioner filed in the Liberty County Circuit Court a state habeas petition against the Secretary of the Florida Department of Corrections, challenging the validity of his original (2001) conviction and sentence.  (Ex. L, p. 1).  The action was transferred to Washington County and assigned Case Number 11-CA-449.  (Ex. M).  The Department of Corrections responded, seeking dismissal of the petition on a number of bases.  (Ex. N).  Petitioner filed a notice of voluntary dismissal on January 13, 2012, (PD-1, pp. 4, 7; Ex. O), but because petitioner put the underlying criminal case numbers rather than the civil habeas case number in the caption of his notice, the notice of dismissal was filed in petitioner's criminal cases and not in the habeas case.  (*See* PD-1, pp. 4, 7; PD-3).  On March 26, 2012, the circuit court dismissed petitioner's habeas corpus petition with prejudice as frivolous, on the grounds that in Florida, habeas corpus cannot be used to collaterally attack a

conviction, and petitioner was using it for precisely that purpose – to raise claims that either were raised or should have been raised on direct appeal or in a prior postconviction proceeding.  (Ex. P).  The court went on to determine that petitioner should be sanctioned:

> Petitioner appealed his conviction and sentence, which was dismissed, and then appealed the denial of his motion for post-conviction relief, which the First DCA affirmed.  However, Petitioner has wasted the Court's time and resources by filing this frivolous petition soon after exhausting his remedies.  As such, Section 944.279(1), Florida Statutes provides sufficient sanctions against the prisoner for filing this frivolous petition.

(Ex. P, p. 2).  The circuit court referred the case to the Florida Department of Corrections to determine the appropriate sanctions under Fla. Stat. § 944.279.  (*Id*.).  Petitioner did not appeal to the First DCA.

Petitioner initiated this federal habeas proceeding on April 5, 2012.  (Doc. 1, p. 1).  The petition raises three grounds for relief:  (1) "Violation of Due Process Rights" by the trial court's failure to hold a hearing and deem petitioner competent before proceeding on the charges; (2) "Ineffective Assistance of Counsel" for counsel's "failing to investigate Defendant's competency and allowing Defendant to be sentenced while being legally 'Incompetent'"; and (3) "Involuntary Violated Probation Because I Was Incompetent."  (Doc. 1, pp. 4-5).  The court liberally construes Grounds One and Two as attacking both petitioner's 2001 initial judgment and sentence as well as petitioner's 2007 VOP judgment and sentence.  Ground Three attacks only petitioner's VOP judgment.  Petitioner asserts he presented all of his claims to the state courts in his Rule 3.850 proceeding.  (*Id*.).

Respondent answers that to the extent one or more of petitioner's claims challenges petitioner's 2001 judgment and sentence, the claim should be dismissed as untimely or, in the alternative, procedurally defaulted.  (Doc. 21, pp. 4-17).

Respondent asserts that to the extent one or more of petitioner's claims challenges the 2007 VOP judgment and sentence, the claim is timely (doc. 21, p. 4), but due to be denied because it either raises a purely state law issue, is procedurally defaulted, or is without merit.  (Doc. 21, pp. 18-21).

APPLICABLE LEGAL STANDARDS

<u>Exhaustion and Procedural Default</u>

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[5] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999);

---

[5]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).  A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  *Bailey*, 172 F.3d at 1303.  In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v.*

*Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

<u>Section 2254 Standard of Review</u>

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[6]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme

_____

[6]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider

evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the

petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

DISCUSSION

The state postconviction court consolidated its analyses of Grounds One and Two, so the undersigned will do the same.

<u>Ground One</u>        "Violation of Due Process Rights" (Doc. 1, p. 4).

<u>Ground Two</u>        "In[ef]fective Assistance of Counsel" (Doc. 1, p. 4).

Petitioner alleges the following in support of Ground One: "I was deemed incomp[e]t[e]nt by courts & invol[u]ntar[ily] hospitalized, but never deemed to be compe[ ]t[e]nt by hearing before sentenced." (Doc. 1, p. 4). Petitioner alleges the following in support of Ground Two: "Failing to investigate Defendant's compe[]tency and allowing Defendant to be sentenced while being legally 'Incompetent.'" (*Id*.). Petitioner asserts he presented both claims to the state courts in his Rule 3.850 motion. (*Id*., pp. 4-5).

Respondent asserts that to the extent Grounds One and Two challenge petitioner's 2001 judgment and sentence, the claims are barred by the federal habeas statute of limitations, 28 U.S.C. § 2244(d), and are procedurally defaulted. (doc. 21, pp. 4, ). Respondent asserts that to the extent Grounds One and Two challenge

petitioner's 2007 VOP judgment and sentence, Ground One is procedurally defaulted and Ground Two is without merit.  (Doc. 21, pp. 17-20).

The court need not address whether petitioner's challenges to his 2001 judgment and sentence are barred by 28 U.S.C. § 2244, because those challenges are barred by respondent's alternative defense of procedural default.  When petitioner raised Grounds One and Two in his Rule 3.850 motion, the state circuit court ruled as follows:

> The Defendant now files the instant motion for postconviction relief, which is timely as to his 2007 VOP conviction and sentence, as he had two years from the date of the DCA's dismissal to file the motion. *Brown v. State*, 802 So.2d 526 (Fla. 1st DCA 2001).  However, the motion is untimely filed to the extent that he challenges his original plea entered in 2001.  *See* Fla. R. Crim. P. 3.850(b) (providing for two-year limitation period for postconviction motions).  That the Defendant was subsequently sentenced for violating his probation does not change the fact that the limitations period for challenging his original plea had already begun to run.  *See Stephens v. State*, 823 So.2d 180, 181 (Fla. 1st DCA 2002); *McFadden v. State*, 904 So.2d 570, 571 (Fla. 4th DCA 2005); *Lyell v. State*, 872 So.2d 447 (Fla. 2d DCA 2004); *Green v. State*, 860 So.2d 1055, 1056, n.1 (Fla. 5th DCA 2003).  To the extent that the Defendant raises a claim of fundamental error regarding his initial plea, that claim is also untimely.  *Hughes v. State*, 22 So.3d 132 (Fla. 2d DCA 2009) (where the Court stated that it was writing to "dispel the common misconception among prisoners that 'fundamental error' can be reviewed in a postconviction proceeding at any time, including beyond the two-year period normally permitted for motions filed under rule 3.850", and held that postconviction claims must be explained within the grounds authorized by the rule itself.).

> The Grounds the Defendant raises relate to his mental competence to proceed.  In Ground 1, the Defendant claims that he was evaluated by two doctors who deemed him incompetent to proceed; that in June 2001, the court issued an order adjudicating him incompetent to proceed; and that he was committed to the Department of Children and Families.  He

claims that he was later deemed competent to proceed by a psychological specialist and placed on the trial docket, after which he entered a plea of no contest on September 18, 2001.  He claims that no hearing was ever held or order ever entered adjudicating him competent to proceed.  He argues that this lack of an adjudication of competence carries over to his violation of probation hearing in 2007, and asserts that he was legally incompetent at that hearing because he was never declared competent at the initial hearing.  The Defendant claims that the Court's failure to hold a hearing and to determine his competency denied him due process, and that his judgment and sentence should be vacated.  He appears to be challenging both the initial judgment and sentence and the VOP judgment and sentence.  In Ground 2, the Defendant claims that his counsel rendered ineffective assistance in failing to investigate his competency and in allowing him to be sentenced while legally incompetent, arguing that counsel knew that the Court had never adjudicated him competent.  He states that, prior to the VOP hearing, he advised his counsel that he had not been on his medications since leaving prison, and asked counsel to help him receive his medications before the VOP hearing.  He asserts that counsel did not do so.  He alleges that his counsel should have requested a competency hearing before the VOP hearing.  He argues that his counsel should never have allowed him to proceed without a proper hearing to determine his competency and an order declaring him to be competent.

    The State responds that, after an exhaustive search, it can find no written order or on-the-record announcement adjudicating the Defendant competent after he was returned from the Department of Children and Families in June 2001.  However, the record includes a letter dated June 15, 2001 from the Department of Children and Families stating that the Defendant was competent to proceed.  Attached was a competency evaluation performed by a psychological specialist and reviewed by a senior psychologist which found the Defendant competent.  (*See* attached).

    As noted above, the Defendant's motion is untimely as to any claim concerning his original plea and sentence from 2001.  Even if it were not, however, it is due to be denied, as is his claim regarding his 2007 sentence.  The Defendant might have been entitled to relief if this

were a direct appeal proceeding.  *See, e.g., Jackson v. State*, 880 So.2d 1241 (Fla. 1st DCA 2004); *Molina v. State*, 946 So.2d 1103 (Fla. 5th DCA 2006).  However, this is a postconviction proceeding alleging ineffective assistance of counsel.  In order to succeed on a claim of ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice resulting from that deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hannon v. State*, 941 So.2d 1109, 1118-1119 (Fla. 2006).  In order to show prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland, supra,* at 694.

State v. Coker*, 987 So.2d 809 (Fla. 1st DCA 2008), is instructive on this issue.  There, the defendant alleged both fundamental error in that no competency evaluation was held, and ineffective assistance of counsel in that counsel did not demand a competency hearing, in his motion for postconviction relief.  The trial court had denied both claims.  The 1st DCA affirmed the denial of the fundamental error claim without further discussion.  It noted that, to succeed on the ineffective assistance claim, the defendant had to show both deficient performance and resulting prejudice.  There, the defendant was able to show prejudice because he alleged and established, through the testimony of a doctor, that he was actually incompetent at the time he entered his plea; thus, if a competency hearing had been held, he would have been adjudicated incompetent to enter the plea. *See Coker, supra*, at 810.  The Defendant cannot do the same in this case.  The Defendant is relying upon a procedural deficiency in his 2001 proceeding and piggybacking that into his claim that he was still technically legally incompetent to proceed in 2007 because he was never actually adjudicated competent in 2001.  However, the Department of Children and Families determined in June 2001 that the Defendant was, in fact, competent.  Attached to DCF's letter was a competency evaluation conducted on June 13, 2001, by a psychological specialist, with the report reviewed by a senior psychologist.  They concluded that the Defendant was competent to proceed.  (*See* attached).  Thus, the Defendant cannot show prejudice, as he has not demonstrated that, but for counsel's alleged deficient performance in failing to secure a competency adjudication, the outcome of the proceeding would have been different.

To the extent that the Defendant also argues that the Court and counsel should have known that he was actually incompetent to proceed in 2007 his claim is without merit. *Florida Rule of Criminal Procedure* 3.210 requires the Court or counsel to order/move for a competency examination only when the Court or counsel find "reasonable ground to believe that the defendant is not mentally competent to proceed." *See* Fla. R. Crim. P. 3.210(b). The Defendant alleges only that he told counsel that he had not been receiving medication for his mental illness. The Defendant fails to allege any inability to understand the proceedings or to communicate with his counsel concerning his defense. The Defendant simply telling the Court or counsel that he was not receiving medication would not have created reasonable grounds to believe that he was incompetent. The transcript of the violation of probation hearing, at which the Defendant testified, clearly demonstrates his ability to understand the proceeding and to participate in them in a meaningful manner. (*See* attached).

(Ex. H, pp. 133-36 and Attach.). The First DCA summarily affirmed. (Ex. K).

The state court's rejection of petitioner's due process and ineffective assistance challenges to his 2001 judgment (Ground One as it relates to the trial court's failure to adjudicate petitioner competent before proceeding with the 2001 plea and sentencing, and Ground Two as it relates to counsel's allowing the 2001 criminal case to proceed absent a judicial finding of competence) was based on the independent and adequate state ground that it was barred by Florida's two-year time limitation. (Ex. H, pp. 133-34). Petitioner has not shown cause for his failure to timely raise the claims, nor has petitioner made the requisite showing under *Schulp, supra*. Petitioner's procedural default bars federal habeas review of his due process and ineffective assistance challenges to the 2001 judgment and sentence asserted in Grounds One and Two. Petitioner's challenges to his 2007 VOP judgment will be addressed in turn.

A.    Ground One – Due Process Challenge to Petitioner's 2007 VOP Judgment and Sentence

Respondent asserts that petitioner's due process challenge to his 2007 VOP judgment (Ground One as it relates to the trial court's failure to determine petitioner's competence before proceeding on the VOP charges) is procedurally defaulted because the claim is a direct appeal issue, and petitioner abandoned his VOP direct appeal. (Doc. 21, p. 18).  Respondent's procedural default argument does not address the fact that petitioner raised this claim in his Rule 3.850 motion as Ground One, and the state postconviction court addressed the claim on the merits.  The state court noted that petitioner "might have been entitled to relief if this were a direct appeal proceeding," (Ex. H, p. 135), but did not find the claim procedurally barred as an issue that should have been raised on direct appeal.  (*Id*.).  The state postconviction court's citation to *Coker, supra*, does not indicate it rejected petitioner's claim on procedural grounds, because nothing in the *Coker* decision indicates the basis upon which Mr. Coker's "fundamental error" claim was rejected.  *State v. Coker*, 987 So.2d 809, 810 (Fla. 1st DCA 2008) ("Appellant challenges the denial of his postconviction motion, alleging both fundamental error in that no competency hearing was held, and ineffective assistance of counsel in that counsel did not demand a competency hearing.  We affirm as to the claim of fundamental error, without further discussion. . . .").  Because petitioner raised his due process challenge to the 2007 VOP judgment in the state postconviction proceeding and the state circuit court did not clearly and expressly reject it on state procedural grounds, this court cannot find the claim is procedurally defaulted as having never been  presented to the state courts or as having been rejected by the state court on independent and adequate state procedural grounds.  The court will review the state postconviction court's denial of relief under the § 2254(d) standard.

Petitioner's due process claim, which is set out more fully in his Rule 3.850 motion, appears to raise both a procedural and a substantive due process challenge. Petitioner claims his 2007 VOP judgment violates due process because (1) the judge presiding over the VOP proceeding failed to comply with the competency hearing procedures mandated by Fla. R. Crim. P. 3.212, in that the court failed to hold a hearing to determine whether petitioner had been restored to competency and failed to make a finding that petitioner was competent to proceed in the VOP proceeding; and (2) there was a reasonable basis to believe petitioner was mentally incompetent to proceed on the VOP charges because he was determined incompetent to proceed in his underlying criminal proceeding on  February 16, 2001, he was never actually adjudicated competent in 2001 and so was still technically legally incompetent to proceed in 2007, and the DCF's determination in June of 2001 that he regained competence was based on petitioner's taking particular medications which petitioner was not taking after he was released from prison in 2006.  (Ex. G, pp. 24-32).

The Eleventh Circuit has articulated the following clearly established federal standard for evaluating a mental competency procedural due process claim:

> The clearly established federal law on this issue, as determined by the Supreme Court, is set out in *Drope v. Missouri*, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975), *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), and *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).  Under *Dusky* the standard for mental competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him."  362 U.S. at 402, 80 S. Ct. at 789 (internal quotation marks omitted).  Under *Drope* and *Pate* the standard for determining whether a trial court violates the Due Process Clause by failing to conduct an inquiry into a defendant's competency to stand trial, where no inquiry is requested, is whether the objective facts known to the trial court at the time create a bona fide

doubt as to mental competency.  *Drope*, 420 U.S. at 180, 95 S. Ct. at 908; *Pate*, 383 U.S. at 385, 86 S. Ct. at 842 ("Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the [trial] judge on his own motion must impanel a jury and conduct a sanity hearing. . . .").

*Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1256 (11th Cir. 2002).

There is no contention that the state postconviction court's rejection of petitioner's mental competency procedural due process claim in this case was contrary to the actual decisions in *Drope*, *Pate*, or *Dusky*.  The only question is whether the state court's rejection of petitioner's claim was objectively unreasonable.

This court has carefully reviewed the state court record, including the 2001 judicial determination of incompetence, the DCF's subsequent determination of competence, the transcript of the 2001 plea and sentencing hearing, and the transcript of the VOP hearing.  The facts known to the judge during the VOP proceeding, including those which petitioner contends were apparent from the record in his criminal case, are that:  (1) petitioner suffered from psychosis which caused him to be judged mentally incompetent in 2001, six years before the VOP proceeding, (2) following petitioner's treatment in a hospital for four months in 2001, the DCF determined in June of 2001 that petitioner was competent to proceed and (3) petitioner pleaded no contest and was convicted in September of 2001 of the underlying criminal charges without a judicial finding of competence but also without any suggestion that petitioner had not been restored to competency as asserted by the DCF.  Petitioner does not allege, and there is nothing in the record to suggest, that the VOP judge was aware petitioner's use of particular medications was discontinued upon his release from prison, or that his lack of those medications affected his ability to understand the proceedings.  The state postconviction court's rejection of petitioner's procedudral due process claim reflects a conclusion that all of the facts

considered together were not sufficient to raise a bona fide doubt as to whether petitioner, at the time of his VOP proceeding, had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he [had] a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402, 80 S. Ct. at 789 (internal quotation marks omitted).   Because the state court's conclusion is not objectively unreasonable, petitioner is not entitled to federal habeas relief on his procedural due process claim.

Petitioner's substantive due process claim – that he was tried on the VOP charges while actually mentally incompetent – fares no better.  The Eleventh Circuit in *Wright, supra*, articulated the standard for evaluating a substantive due process mental competency claim:

> "'[A] petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence.'"  *Medina*, 59 F.3d at 1106 (*quoting James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992)).  Only "[a] petitioner who presents clear and convincing evidence creating a real, substantial, and legitimate doubt as to his competence to stand trial is entitled to a hearing on his substantive competency claim." *Id*. (internal quotation marks and citations omitted). . . . "[T]he standard of proof is high and the facts must positively, unequivocally, and clearly generate the legitimate doubt" about whether the petitioner was mentally competent when he was tried.  *Id*. (internal quotation marks, brackets, and citation omitted).   "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Id*. at 1107 (internal quotation marks, brackets, and citations omitted).

*Wright*, 278 F.3d at 1259 (*quoting Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995)).

The state postconviction court reasonably concluded that petitioner failed to meet that high standard.  Neither the fact that the trial court failed to make a formal

judicial determination of competency in 2001 following the DCF's determination of competency, nor the fact that petitioner's medications were discontinued upon his release from prison in 2006, was sufficient to create a real, substantial, and legitimate doubt as to whether petitioner was competent to proceed on the VOP charges in 2007. The best evidence of petitioner's mental state at the time of his VOP proceeding is the transcript of the VOP hearing which shows how petitioner related to and communicated with others in 2007.  The unrebutted evidence at the VOP hearing is that petitioner behaved in a perfectly normal fashion, related well to others, communicated with defense counsel, the judge and the prosecutor with no difficulty, and eloquently articulated his defense.  (Ex. E).  There is no evidence that petitioner behaved abnormally in either the weeks and months leading up to the VOP hearing, or during the VOP hearing itself.  There is no evidence that petitioner had any problem understanding the VOP charges against him or communicating with his counsel.  The state postconviction court's rejection of petitioner's substantive due process claim was not contrary to clearly established federal law, was not objectively unreasonable, and was not based on an unreasonable determination of the facts.

Petitoiner is not entitled to federal habeas relief on the procedural and substantive due process claims raised in Ground One.

> B.    Ground Two – Ineffective-Assistance-of-Counsel Challenge to Petitioner's 2007 VOP Judgment and Sentence

Respondent asserts that petitioner is not entitled to relief on this claim because the state postconviction court's rejection of it was based on a reasonable determination of the facts and a reasonable application of the *Strickland* standard.

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard.  In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry

for ineffective assistance claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner.  *Id.*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690, 104 S. Ct. at 2066.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Id.* at 694, 104 S. Ct. at 2068.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 131 S. Ct. at 792.

The state postconviction court identified *Strickland* as the controlling legal standard, and applied that standard to petitioner's claim that VOP counsel was ineffective for failing to investigate petitioner's competency to proceed on the VOP charges and for allowing petitioner to be sentenced while legally incompetent.  The

state court determined, reasonably, that neither counsel's knowledge that there was no formal adjudication of competency in 2001, nor counsel's knowledge that petitioner had not taken his medications since leaving prison in 2006, provided counsel with an arguably sufficient basis to question petitioner's competence to proceed on the VOP charges.  This is especially true given petitioner's coherent, rational and responsive conduct at the VOP hearing.  (Ex. E).

The state court also concluded, reasonably, that petitioner failed to show a reasonable probability that the outcome of his VOP proceeding would have been different had counsel secured an adjudication of competency in 2001, or had counsel sought a competency examination in 2007 based on either the lack of a competency adjudication in 2001 or petitioner's lack of medication upon release from prison. Petitioner has not shown, in the state court or here, that a competency examination in 2007 would have revealed any inability of petitioner to understand the VOP proceedings or to communicate with counsel concerning his defense.  To the contrary, the transcript of the VOP hearing demonstrates that petitioner fully understood the proceeding, fully and meaningfully participated in the VOP hearing, and very effectively communicated with counsel, the prosecutor and the court.  (Ex. E).  The state postconviction court's rejection of petitioner's ineffective assistance claim was not an unreasonable application of the *Strickland* standard.

Petitioner is not entitled to federal habeas relief on Ground Two.

<u>Ground Three</u>        "Invol[u]ntary Violated Probation Because I Was Incompetent"
(Doc. 1, p. 5).

In Ground Three, petitioner challenges his 2007 VOP judgment on the grounds that he "was sentenced for violation of probation while still legally incompetent." (Doc. 1, p. 5).  Petitioner asserts he exhausted this claim by raising it in his Rule 3.850 proceeding.  (*Id*.).  Respondent asserts petitioner is not entitled to federal

habeas relief, because petitioner's conclusory statement, without facts, does not state a claim for federal habeas relief.  (Doc. 21, p. 20).  Respondent also argues that this claim is procedurally defaulted and without merit.  (*Id*., pp. 20-21).

Petitioner raised this claim as Ground Three of his Rule 3.850 motion.  The state postconviction court denied relief as follows:

> In Ground 3, the Defendant asserts that a violation of probation by an incompetent defendant is neither willful nor substantial, and that he could not be found guilty of the violation while legally incompetent to proceed.  In this Ground, the Defendant challenges the sufficiency of the evidence for the violation, arguing that he was kicked out of the Salvation Army program that he had been ordered to attend, which proves that he did not leave willfully, and argues that the State never proved that the violations were willful.  Challenges to the sufficiency of the evidence cannot be raised in a Rule 3.850 motion.  *See, e.g., Betts v. State*, 792 So.2d 589, 590 (Fla. 1st DCA 2001); *Hoewischer v. State*, 474 So.2d 898 (Fla. 1st DCA 1985).  He also claims that, because he was never adjudicated competent, he was still legally incompetent to proceed and sentencing him while he was incompetent violated his due process rights.  For the reasons outlined above, this claim is without merit.

(Ex. H, p. 136).  The First DCA summarily affirmed.  (Ex. K).

The claim petitioner presents in his federal habeas petition does not attack the VOP judgment on grounds of insufficient evidence, but rather on petitioner's alleged incompetency to proceed.  The state court did not reject petitioner's competency claim on the basis of a state procedural bar – the court addressed the claim on the merits.  Accordingly, petitioner is entitled to review of Ground Three under the § 2254(d) standard.

Petitioner's claim fails for the reasons discussed above in denying petitioner's substantive due process claim.  Petitioner has not shown that he was subjected to a VOP proceeding while mentally incompetent in violation of his substantive due

process rights.  The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of clearly established federal law.  Nor was the state court's decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Three.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall mail a copy of this Report and Recommendation to petitioner at his address of record (Liberty Correctional Institution) as well as the address indicated

for petitioner on the Florida Department of Corrections' website:   Wakulla Correctional Institution, 110 Melaleuca Drive, Crawfordville, Florida 32327-4963. *See* http://www.dc.state.fl.us.

And, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Robert D. Byers*, Washington County, Florida, Circuit Court Case Numbers 00-CF-103 and 00-CF-149, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 4th day of September, 2014.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).